UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION

JOHN FELICE,

    Plaintiff,

v.                                                                                      Civil Action No.: 2:25-cv-00590

MICHAEL ABEL, in his individual capacity;
EVAN DEGRAEF, in his individual capacity;
JOSH ANKROM, in his individual capacity;
AUSTIN ANDERSON, in his individual capacity;
BRYAN VARNEY, in his individual capacity;
JACKSON COUNTY COMMISSION,
A West Virginia County Government;
CITY OF RAVENSWOOD, a West Virginia
Municipal Corporation;

    Defendants.

**COMPLAINT**

Plaintiff, John Felice, for his Complaint against the defendants, states as follows:

**I.  JURISDICTION AND VENUE**

1. Jurisdiction of this Court is invoked under 28 U.S.C. §§1343 et seq. This action at law for money damages arises under 42 U.S.C. §§ 1983, 1988, the United States Constitution, the laws and Constitution of West Virginia and common law principles to redress a deprivation under color of state law of rights, privileges and immunities secured to Plaintiff by said statutes and by the Fourth and Fourteenth Amendments of the United States Constitution. This Court has jurisdiction over Plaintiff's claims for violations of his federal constitutional rights pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

2. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. 1367(a) because these claims arise out of the same set of facts as the federal claims such that all claims form part of the same case or controversy.

3. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claim occurred in the Jackson County, WV which is within the Southern District of West Virginia.

## II.   PARTIES

4. Plaintiff, John Felice, was at the times relevant to this Complaint a resident of Jackson County, West Virginia and subject to the unlawful actions of the Defendants.

5. Defendant Michael R. Abel is a deputy employed by the Jackson County Sheriff's Office. He is a "person" within the meaning of 42 U.S.C. § 1983 and, at all relevant times, was acting under color of state law. He is sued in his individual capacity.

6. Defendant Evan DeGraef is a police officer employed by the City of Ravenswood Police Department. He is a "person" within the meaning of 42 U.S.C. § 1983 and, at all relevant times, was acting under color of state law. He is sued in his individual capacity.

7. Defendant Josh Ankrom is a police officer employed by the City of Ravenswood Police Department. He is a "person" within the meaning of 42 U.S.C. § 1983 and, at all relevant times, was acting under color of state law. He is sued in his individual capacity.

8. Defendant Austin Anderson is a law enforcement officer employed by the Jackson County Sheriff's Office. He is a "person" within the meaning of 42 U.S.C. § 1983 and, at all relevant times, was acting under color of state law. He is sued in his individual capacity.

9. Defendant Bryan Varney is a supervisory law enforcement officer employed by the Jackson County Sheriff's Office. He is a "person" within the meaning of 42 U.S.C. § 1983 and, at all relevant times, was acting under color of state law. He is sued in his individual capacity.

10. Defendant Jackson County Commission is a political subdivision of the State of West Virginia and the governing authority for Jackson County. Pursuant to West Virginia law, the Jackson County Commission created and administers the Jackson County Sheriff's Office, and exercises control, authority, and discipline over its operations and personnel. The Jackson County Commission is a "person" within the meaning of 42 U.S.C. § 1983.

11. Defendant City of Ravenswood is a municipal corporation organized under the laws of the State of West Virginia. It operates and administers the Ravenswood Police Department and is responsible for the training, supervision, and discipline of its officers. The City of Ravenswood is a "person" within the meaning of 42 U.S.C. § 1983.

### III.   FACTS

12. On October 5, 2024, John Felice was on his front porch when numerous police cars pulled up in front of his house and confronted him telling him they had a suspicious person report that someone looked in someone else's car. Those officers were defendants Abel, DeGraef, Ankrom, and Anderson.

13. Felice confirmed he looked in the window of a truck parked in front of his house on the house where he had a curb cut but never left his property.

14. This was a consensual encounter. Felice was never told he was under arrest, being detained or patted down for weapons. This is because he had done nothing wrong

and neither probable cause nor reasonable suspicion existed. The officers confirmed this by telling Felice there was nothing illegal about him walking around in his yard.

15. Despite the fact that there was no suspicion Felice committed a crime, the officers repeatedly asked him for identification.

16. Felice did not produce identification and under West Virginia law he had no legal duty to do so.

17. Instead of producing identification, Felice stated something to the effect of, "Come here, I'll show you my mail," and turned to walk toward his residence. He intended to retrieve a piece of mail bearing his name and address to demonstrate that he lived at the property.

18. Deputy Abel followed Felice toward the house but expressed disinterest in the mail, stating aloud that a piece of mail "doesn't prove that that's who you are."

19. This statement made clear that Abel did not view the mail as a valid form of identification.

20. Nevertheless, Abel's actions and statements made clear that he believed Felice was the resident of the home. Despite claiming he could not confirm Felice's identity, Abel made no effort to stop Felice from entering the residence and instead followed him toward it, implicitly acknowledging Felice's authority to enter and control the premises.

21. Felice entered his residence, and Deputy Abel stopped just outside the threshold of the door.

22. The other responding officers remained outside as well, within earshot and line of sight of Deputy Abel.

23. While Felice was inside retrieving his mail and driver's license, Deputy Abel unlawfully entered the home without a warrant, consent, or legal justification.

24. Upon noticing that Abel had entered, Felice expressly told him to leave the residence. Abel refused. When Felice repeated his demand and told Abel that he had no right to be in the home, Abel again refused to exit.

25. At that point, Abel became visibly enraged and began yelling. Without informing Felice that he was under arrest or issuing any lawful commands, Abel suddenly grabbed Felice and violently slammed him to the ground.

26. At the time Deputy Abel unlawfully entered the residence, the other responding officers—including Anderson, Ankrom, and DeGraef—were positioned just outside the door. Each had a clear line of sight into the home and could hear the exchange between Abel and Felice. These officers knew or should have known that no warrant had been obtained, no exigent circumstances existed, and Felice had expressly told Abel to leave the residence.

27. Despite having the opportunity to prevent the constitutional violation, none of the officers intervened to stop Abel from unlawfully entering the home or to de-escalate the situation. Instead, they stood by and allowed the violation to continue.

28. Because the officers' entry into the home was unlawful, any force used after that point—including physical restraint, takedown, and striking Felice—was likewise unconstitutional under clearly established Fourth Amendment principles. The officers' collective failure to prevent or mitigate that use of force constitutes an additional constitutional violation.

29. The other officers then entered the residence without a warrant or exigent circumstances. Abel, DeGraef, and Ankrom went "hands on" with the Felice and illegally restrained and handcuffed him.

30. While Felice was lying on the ground and compliant, Deputy Abel struck Felice in the back without provocation or lawful justification.

31. Following the unlawful arrest, Felice was transported to the hospital due to injuries sustained during the use of force. While in custody at the hospital, Sergeant Varney of the Jackson County Sheriff's Office arrived, activated his body-worn camera, and spoke with Felice.

32. During this recorded interaction, Sgt. Varney stated that Felice had been properly arrested, explaining that in West Virginia, failure to comply with a law enforcement officer's order—such as presenting identification—constitutes obstruction. Although he later attempted to qualify this by saying only "lawful" commands must be followed, Sgt. Varney continued to assert that a refusal to present ID was, in and of itself, obstructive conduct. His statements reflect a fundamental misunderstanding of constitutional law and demonstrate a department-wide policy or practice of unlawful arrests for protected conduct.

33. These statements reflect an unconstitutional departmental policy and custom under which individuals may be arrested for asserting their rights or refusing to comply with unlawful commands. Sgt. Varney's recorded remarks demonstrate departmental ratification of Deputy Abel's unlawful entry and arrest, and show that the misconduct was not an isolated incident but part of a broader, endorsed practice.

34. Felice was transported to South Central Regional Jail, where he remained incarcerated for numerous days before being released.

35. Deputy Abel subsequently filed criminal complaints against Felice, charging him with obstruction of an officer, resisting arrest, and assault on a law enforcement officer.

36. These charges were based on a false and retaliatory narrative and were brought not because Felice had committed any offense, but in an effort to justify Abel's unlawful conduct and insulate himself from civil liability.

37. All charges against Felice were ultimately dismissed following a suppression hearing in which the court determined that the entry and arrest were unlawful.

38. As a result of the force used by the defendants during the unlawful entry and arrest, Plaintiff sustained physical injuries, including pain to his back and neck and the aggravation of a previously surgically repaired cervical spine condition. Plaintiff experienced significant physical discomfort, required medical treatment, and was transported to the hospital by EMS from the scene. In the weeks and months that followed, Plaintiff developed symptoms consistent with post-traumatic stress disorder (PTSD), including heightened anxiety, sleep disturbances, and fear of law enforcement. Plaintiff continues to suffer both physically and emotionally from the events described herein.

COUNT I
CIVIL RIGHTS VIOLATION
Excessive Force– 42 U.S.C. § 1983
Against Abel, DeGraef, and Ankrom

39. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

40. The force used against Felice was objectively unreasonable, excessive, and unconstitutional. At the time force was applied, Plaintiff had not committed any crime, was unarmed, presented no threat, and had either already surrendered or was not resisting.

41. Moreover, because all officers' entry into Plaintiff's home was unlawful, any use of force inside the residence was per se unreasonable under clearly established Fourth Amendment law. No objectively reasonable officer could have believed that applying physical force during an illegal entry was constitutionally justified.

42. The actions of the individual defendants were willful, wanton, malicious, and carried out with deliberate indifference to Plaintiff's constitutional rights. The force was not applied in good faith to overcome resistance but instead to punish, retaliate, or assert unlawful control.

43. As a direct and proximate result of the excessive force described above, Plaintiff suffered physical injuries.

COUNT II
CIVIL RIGHTS VIOLATION
Unlawful Entry – 42 U.S.C. § 1983
Against Abel, DeGraef, Ankrom, and Anderson

44. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

45. Plaintiff had a clearly established constitutional right to be free from warrantless, non-consensual entry into his home, as protected by the Fourth and Fourteenth Amendments to the United States Constitution and Article III, Section 6 of the West Virginia Constitution.

46. All individual defendants who entered Plaintiff's home—namely, Michael Abel, Austin Anderson, Josh Ankrom, and Evan DeGraef—did so without a warrant, without valid consent, and in the absence of any exigent circumstances. At no time did Plaintiff pose a threat, commit a crime, or give any officer permission to enter. The entry by each of these officers was unlawful under clearly established Fourth Amendment law.

47. Plaintiff explicitly told Deputy Abel to leave his residence. The other officers either witnessed or were aware of this demand and nevertheless chose to enter. Each officer's decision to enter constituted an independent constitutional violation and contributed to the unlawful arrest and use of force that followed.

48. Each of these defendants had a duty to refrain from entering a private residence without a warrant or recognized exception to the warrant requirement. Each chose to unlawfully enter and thereby violated Plaintiff's clearly established constitutional rights.

49. As a direct and proximate result of these unlawful entries, Plaintiff suffered injury, emotional distress, loss of liberty, and a violation of his right to be secure in his home against government intrusion.

COUNT III
CIVIL RIGHTS VIOLATION
False Arrest / Unlawful Seizure – 42 U.S.C. § 1983
Against Abel, DeGraef, Ankrom, and Anderson

50. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

51. At the time Plaintiff was seized, the individual defendants lacked probable cause to arrest him for any offense under West Virginia or federal law. No crime had been

committed in the officers' presence, and Plaintiff had not engaged in any conduct that would justify an arrest under clearly established legal standards.

52. The arrest occurred after Plaintiff exercised his right to refuse to provide identification during a consensual encounter. Plaintiff was on his own property, had committed no crime, and had every right to terminate the encounter and exclude the officers from his home.

53. The justification given by Deputy Abel—that Plaintiff was obstructing by not presenting identification—was contrary to clearly established law and contradicted by body-worn camera footage. No reasonable officer could have believed that probable cause existed under these circumstances.

54. In effecting the arrest, the individual defendants violated Plaintiff's clearly established rights under the Fourth and Fourteenth Amendments to the United States Constitution, including his right to be free from unreasonable seizure without probable cause.

55. As a direct and proximate result of the unlawful arrest, Plaintiff suffered physical and emotional injury, loss of liberty, reputational harm, and other damages.

COUNT IV
CIVIL RIGHTS VIOLATION
First Amendment Retaliation – 42 U.S.C. § 1983
Against Abel, DeGraef, Ankrom, and Anderson

56. Plaintiff re-alleges the foregoing paragraphs. At all relevant times, Plaintiff had a clearly established right under the First and Fourteenth Amendments to verbally challenge and criticize police conduct, to question demands for identification during a consensual encounter, and to object to warrantless entry into his home.

57. Upon arrival, Felice verbally challenged the officers' presence and conduct. DeGraef responded, "You're not going to act that way," expressing disapproval of Felice's speech. When Ankrom demanded identification, Felice asked "Why?," and no legal basis was provided. Felice repeatedly asserted his rights, stating "Get out of my house," and "Get out of my fucking house unless you have a warrant."

58. Felice's statements—including questioning the officers, objecting to warrantless entry, and insisting on a warrant—constituted protected speech and petitioning activity.

59. In response to this protected speech, Abel became agitated, escalated the encounter, entered the home without legal justification, violently took Felice to the ground, and later struck him while restrained, and the officers arrested Felice.

60. The use of force and arrest were substantially motivated by Felice's protected speech and his refusal to acquiesce to unlawful commands. The close temporal proximity, officers' contemporaneous statements, and escalation immediately following Felice's objections demonstrate retaliatory animus.

61. There was no probable cause to arrest Felice for any offense. The retaliatory arrest therefore violates the First Amendment under clearly established law.

62. This retaliation would deter a person of ordinary firmness from continuing to speak and did, in fact, deter and punish Plaintiff. As a direct and proximate result, Plaintiff suffered physical injury, emotional distress, and the violation of his constitutional rights.

## COUNT V
## CIVIL RIGHTS VIOLATION

Failure to Intervene – 42 U.S.C. § 1983
Against Abel, DeGraef, Ankrom, and Anderson

63. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

64. At the time of the incident, it was clearly established that law enforcement officers have an affirmative duty to intervene to prevent fellow officers from violating an individual's constitutional rights, where the officer has a realistic opportunity to intervene and fails to do so.

65. All of the individual defendants—Abel, Anderson, Ankrom, and DeGraef—were present during various stages of the unlawful entry, use of force, and arrest of Plaintiff.

66. Each of these defendants had a clear view of the events as they unfolded and had sufficient time and opportunity to prevent the unlawful conduct, including the unconstitutional entry into Plaintiff's home, the use of excessive force, and the arrest without probable cause.

67. Despite having the opportunity and authority to intervene, each defendant failed to act. All individual defendants either directly participated in or stood by and allowed the unlawful entry, excessive force, and arrest to occur without intervening to prevent or mitigate the constitutional violations.

68. By standing by and allowing constitutional violations to occur, each defendant directly contributed to the unlawful conduct and is liable under 42 U.S.C. § 1983.

69. As a direct and proximate result of the defendants' failure to intervene, Plaintiff suffered physical injury, emotional distress, and the violation of his clearly established constitutional rights.

## COUNT VI
## CIVIL RIGHTS VIOLATION
Supervisory Liability – 42 U.S.C. § 1983
Against Bryan Varney

70. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

71. At all relevant times, Defendant Varney was a supervisory officer employed by the Jackson County Sheriff's Office and acted under color of state law.

72. Following the arrest of Plaintiff, Varney responded to the hospital and, while wearing an activated body-worn camera, conducted a post-incident interview with Plaintiff in custody.

73. During this recorded interaction, Varney stated that Plaintiff had been properly arrested, and further asserted that any refusal to follow a law enforcement officer's order—including a refusal to provide identification—is, by itself, obstruction. Varney stated that when an officer tells someone to do something, "you have to do it," and repeatedly justified the arrest, entry, and use of force as lawful.

74. Prior to this interview, Varney reviewed Abel's body-worn camera footage alongside Abel. Despite observing the warrantless entry, use of force, and Plaintiff's repeated objections, Sgt. Varney nonetheless affirmed that the conduct was lawful and appropriate.

75. These statements reveal a fundamental misunderstanding of the Fourth Amendment and demonstrate that Varney personally ratified and defended the unconstitutional actions of his subordinate officers, even after reviewing their body-worn camera footage.

76. Varney's statements and conduct reflect a pattern of deliberate indifference to the constitutional rights of citizens and demonstrate that the violations committed by the arresting officers were consistent with, and encouraged by, supervisory personnel within the Jackson County Sheriff's Office.

77. By reviewing the body-worn camera footage, endorsing the unlawful arrest and entry, and affirming the legality of the officers' actions despite knowing the constitutional violations involved, Varney demonstrated deliberate indifference and ratified the misconduct. His approval of the conduct—after full review—directly contributed to the ongoing constitutional violations and reflects an institutional acceptance of such behavior within the Jackson County Sheriff's Office.

78. As a direct and proximate result of Varney's acts and omissions, Plaintiff suffered physical injury, emotional distress, and the violation of his clearly established constitutional rights.

COUNT VII
CIVIL RIGHTS VIOLATION
Malicious Prosecution – 42 U.S.C. § 1983
Against Defendant Michael Abel

79. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

80. Following Plaintiff's unlawful arrest, Defendant Michael Abel swore out criminal complaints against Plaintiff for obstruction of an officer, resisting arrest, and assault on a law enforcement officer.

81. These charges were not supported by probable cause. The underlying conduct—refusing to present identification during a consensual encounter on Plaintiff's own property and objecting to warrantless police entry—was not unlawful.

82. The charges were based on false and misleading statements made by Defendant Abel and were filed for the improper purposes of justifying the unlawful arrest, retaliating against Plaintiff for asserting his constitutional rights, and shielding Abel from civil liability.

83. The prosecution terminated in Plaintiff's favor when all charges were dismissed following a suppression hearing that found the entry and arrest unconstitutional.

84. As a result of the malicious prosecution, Plaintiff suffered unlawful incarceration, emotional distress, reputational harm, and financial loss.

## COUNT VIII
### MUNICIPAL LIABILITY – 42 U.S.C. § 1983
### Against Jackson County Commission and City of Ravenswood

85. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

86. The constitutional violations described above—including warrantless entry into Plaintiff's home, excessive force, arrest without probable cause, retaliatory arrest, and failure to intervene—were not isolated incidents, but were caused by the customs, policies, or official acts of the Jackson County Commission and the City of Ravenswood.

87. These customs and policies include, without limitation:

- Permitting or tolerating warrantless entry into private residences absent exigent circumstances or valid consent;
- Failing to adequately train, supervise, and discipline officers regarding the legal standards for consensual encounters, demands for identification, probable cause, and exigency under the Fourth Amendment;

- Endorsing or tolerating the belief that refusal to present identification during a consensual encounter constitutes "obstruction";
- Tolerating or encouraging the use of force in response to protected verbal speech or criticism;
- Failing to train on de-escalation and on the limits of force where no detention or resistance exists;
- Allowing officers to initiate criminal charges based on false or misleading narratives to justify unconstitutional conduct; and
- Ratifying misconduct through supervisory approval—including, in this case, a supervising sergeant who reviewed body-worn camera footage and explicitly affirmed the legality of the warrantless entry, "obstruction" theory, and arrest.

88. Plaintiff asserts *Monell* liability under multiple independent theories, including: (1) formal policies adopted and enforced by the County and City; (2) widespread and well-settled customs and practices of constitutional violations; (3) failure to train, supervise, and discipline officers in a manner that reflects deliberate indifference to the obvious need for training on in-home entry, obstruction/ID, and use of force; and (4) ratification of unconstitutional conduct by supervisory personnel such as Sgt. Varney, whose post-incident statements and approvals reflect and reinforce the municipalities' failure to correct known violations.

89. Notice via prior litigation. On information and belief, before October 5, 2024, the Jackson County Commission/Jackson County Sheriff's Office and the City of Ravenswood/Ravenswood Police Department were placed on notice of materially similar misconduct by their officers through publicly filed cases and reports, including:

- Fields v. Mellinger, 244 W. Va. 126, 851 S.E.2d 789 (2020) (certified question arising from S.D.W. Va. case against Jackson County deputy Ross Mellinger, Sheriff Tony Boggs, and the Jackson County Commission; underlying facts include an

16

- arrest for "obstruction" following a low-level encounter, with charges dismissed in Jackson County Magistrate Court);

- Nutter & Barnette v. Mellinger, et al., No. 2:19-cv-00787 (S.D.W. Va.) (civil-rights action alleging deputies entered a residence without lawful basis and used force, followed by obstruction/battery-on-officer charges; Jackson County Commission named on Monell/supervisory theories);

- Amy Faye Davis v. City of Ravenswood, et al. (Jackson County Cir. Ct., filed March 19, 2012) (action against the City and Ravenswood officers, alleging warrantless arrest/force and charges for obstructing/assault on an officer).

Despite this notice, the municipalities failed to implement corrective policies, remedial training, or discipline.

90. Supervisory ratification is further evidenced here: after reviewing body-worn camera footage, a supervising sergeant expressly approved the warrantless entry, declared that refusal to follow an officer's directive—including presenting identification—is "obstruction," and affirmed the arrest as lawful. This post-incident approval reflects an existing policy/custom and communicates to subordinates that such conduct is authorized.

91. The Jackson County Commission and the City of Ravenswood acted with deliberate indifference to the known and obvious risk that their policies, customs, and training failures would result in violations of constitutional rights. Despite notice, they failed to adopt adequate policies, to train or retrain officers, or to investigate and discipline constitutional violations, thereby maintaining practices that led directly to the harms alleged herein.

92. The municipalities' policies, customs, training failures, and supervisory ratification were the moving force and proximate cause of the violations of Plaintiff's First and Fourth Amendment rights and the injuries and damages he suffered.

## COUNT IX
## STATE LAW CLAIMS
Against Individual Officers and Municipal Entities under West Virginia Law

93. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs of this Complaint as though fully set forth herein.

94. The actions of the individual defendants described above constitute the following torts under the common law of the State of West Virginia:

> A. False Arrest – The individual defendants intentionally and unlawfully detained and arrested Plaintiff without probable cause, in violation of Plaintiff's right to be free from wrongful restraint of liberty.

> B. Assault and Battery – The individual defendants, including but not limited to Deputy Abel, physically attacked Plaintiff by grabbing him, throwing him to the ground, and striking him without legal justification. These actions constitute both assault and battery under West Virginia law.

> C. Outrageous Conduct / Intentional Infliction of Emotional Distress – The conduct of the individual defendants, including unlawfully entering Plaintiff's home, violently tackling and striking him without justification, arresting him for no reason, and initiating criminal charges based on false statements, was extreme and outrageous. Said conduct was carried out intentionally or with reckless disregard for Plaintiff's rights, and with the purpose or effect of causing severe emotional distress. As a direct and proximate result of this conduct, Plaintiff did in fact suffer severe emotional distress, including but not limited to anxiety, humiliation, fear, and post-traumatic stress.

95. The conduct described above occurred within the scope of the individual defendants' employment as law enforcement officers for the Jackson County Sheriff's Office and/or City of Ravenswood Police Department.

96. The following additional claims are asserted against the Jackson County Commission and the City of Ravenswood:

> A. Negligent Hiring – The municipal defendants failed to exercise reasonable care in the hiring of officers, including those who lacked proper training, temperament, or qualifications to lawfully and safely perform law enforcement duties.

B. Negligent Retention – The municipal defendants retained officers they knew or should have known posed an unreasonable risk of violating citizens' rights, including by failing to respond to patterns of unconstitutional behavior.

C. Negligent Supervision – The municipal defendants failed to properly supervise officers, failed to monitor their conduct, and failed to take corrective or disciplinary action when necessary, thereby contributing to the harms suffered by Plaintiff.

D. Respondeat Superior/Vicarious Liability (Negligence-Based Only). Pursuant to W. Va. Code § 29-12A-4(c)(2), the Jackson County Commission and the City of Ravenswood are vicariously liable for injury caused by the negligent performance of acts by their employees while acting within the scope of employment. Plaintiff does not seek to impose vicarious liability on the municipal defendants for employees' intentional torts (e.g., assault, battery, or false arrest).

97. As a direct and proximate result of the foregoing acts and omissions, Plaintiff suffered physical injuries, emotional distress, reputational harm, and loss of liberty.

## V. PRAYER FOR RELIEF

WHEREFORE, based upon the foregoing, Plaintiff John Felice respectfully requests that this Court:

A. Order the Jackson County Commission and the City of Ravenswood to develop and implement written policies, training programs, and supervisory procedures that:

1. Clearly prohibit warrantless entry into a private residence absent exigent circumstances or valid consent;
2. Accurately reflect West Virginia law on obstruction, including clarification that refusal to present identification—without more—is not obstruction under state law;
3. Require that officers receive retraining on lawful arrest standards, investigative detentions, and the constitutional limits on the use of force during consensual encounters;
4. Establish clear procedures for supervisory review of incidents involving force and in-home arrests, including bodycam review protocols and use-of-force documentation;
5. Include specific disciplinary mechanisms for officers who violate citizens' Fourth and First Amendment rights.

B. Award compensatory damages in an amount to be determined at trial that will fairly and reasonably compensate Plaintiff for:

1. Past, present, and future medical expenses and lost wages;
2. Past, present, and future physical pain, emotional suffering, psychological distress, loss of enjoyment of life, and mental anguish;
3. All other compensatory damages allowed by law and proven at trial.

C. Award punitive damages against the individual defendants in an amount sufficient to punish and deter future constitutional violations.

D. Award Plaintiff his reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988 and any other applicable law.

E. Grant such other and further relief as the Court deems just, proper, and equitable under the circumstances.

**PLAINTIFF DEMANDS A JURY TRIAL**

Respectfully Submitted,

s/Richard W. Weston
Richard W. Weston
Weston Law
P.O. Box 21733
Lexington, KY 40522
859.636.1970
rich@weston.law


s/Michael N. Eachus
Finley and Eachus, Attorneys at Law
435 Second Ave., P.O. Box 741
Gallipolis, Ohio 45631
(740) 446-3334 Office
(844) 446-4633 Fax
Finleyandeachus@gmail.com